UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

**CIVIL ACTION NO. 0:05-CV-82-HRW**

**JUNE DIENGES,**                                                                                    **PLAINTIFF,**

**V.**

**RAMEY-ESTEP HOMES,**                                                 **DEFENDANT.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant's Motion for Summary Judgment [Docket No. 8]. The matter has been fully briefed and now stands ripe for decision. Having considered the motion fully, and being otherwise sufficiently advised, the Court finds the Defendant is entitled to judgment as a matter of law and will sustain the motion.

**I. Background**

Prior to January 11, 2005, Plaintiff was employed by Defendant, Ramey-Estep as a child care worker. The Complaint alleges very generally that Plaintiff was unlawfully fired for "plaintiff's lawful use of Family Medical Leave Act time and the filing of a Workmen's Compensation claim." Plaintiff claims that there was "no legitimate reason" for her termination, and that she was replaced by someone who is not a member of a protected class as she is (i.e., a woman over the age of forty). Plaintiff does not, however, specifically identify said individual.

Plaintiff alleges that Defendant violated her rights under Title VII of the Civil Rights Act of 1964 as well as those under the Kentucky Civil Rights Act.[1] Plaintiff also claims that Defendant violated the Kentucky Workers' Compensation Act and the Family and Medical Leave Act in that her discharge was a retaliation for her reporting an on the job injury. Plaintiff claims damages for lost wages, humiliation, personal indignity, and emotional distress, and front pay.

On January 1, 2005, Plaintiff had been scheduled to work her usual eight-hour shift from 7 a.m. to 3 p.m. Hourly employees, like the plaintiff, who work on holidays are paid at twice their hourly and are required to log their actual hours worked on a central time sheet. The employees are then paid based upon the hours reflected on that log. Plaintiff reported on the time sheet that on January 1, 2005, she worked her full regular shift (7 a.m. to 3 p.m.), but in fact, she left work at around 1:30 pm in order to catch a plane to begin her holiday vacation. Thus, Plaintiff overstated her time on the time sheet for January 1, 2005.

Plaintiff had made arrangements with a co-worker, Sunny Grimes, for Grimes to come in early in order to cover the last couple of hours on Plaintiff's shift. According to Plaintiff claims that she received permission from her

---

[1] Age discrimination in this case would only be actionable under the Kentucky Civil Rights Act. Title VII does not recognize age as a protected class. 42 U.S.C. §§2000e, et seq. Based on Plaintiff's pleading, the only protected class recognized by Title VII and applicable to the plaintiff is that of gender.

supervisor, T. Ross, to leave early on the day in question and was told that she could make up that time. No affidavit or other evidence in the record appears to support such a claim.

Defendant states that Ms. Grimes also overstated her time on January 1, 2005. Ramey-Estep discovered the overstated time records of Plaintiff and Grimes on January 10, 2005. Plaintiff was not scheduled to return to work until January 11, 2005. The Ramey-Estep management team then met to discuss discipline for the two employees. Defendant states that the decisions regarding the discipline were made on January 10, 2005. (Schaffer Affidavit, ¶¶ 7,8,10; Evans Affidavit, ¶ 5). Ms. Grimes was suspended for three days without pay for the episode. Plaintiff was terminated.

Ms. Grimes was informed of her discipline while at work on January 10, 2005. Plaintiff had not yet returned from vacation on January 10. Additionally, Plaintiff's supervisor was not scheduled to be at work until near the end of Plaintiff's first shift back on the January 11. Defendant emphasizes the importance of a supervisor's presence at termination and states that this is why she wasn't fired until the end of her shift on January 10. (Schaffer Affidavit, ¶¶ 10-14; Evans Affidavit, ¶¶ 5-10).

Defendant claims that the ladies' prior work histories were considered in

determining the severity of the respective punishments. Defendant states that the decision to terminate Plaintiff, as opposed to the suspension Ms. Grimes received, was based upon her prior level of disciplinary actions.(Schaffer Affidavit, ¶ 9). Plaintiff's employment record contained several supervisory actions and disciplinary actions prior to the January 1, 2005 time sheet incident.[2] In addition, the Plaintiff had been suspended and referred to an employee assistance program on June 11, 2004, concerning Plaintiff's arrest on charges of domestic violence (fourth degree assault) against her daughter.(Evans Affidavit, ¶ 15; Docket No. 8-9, "May 2004 Suspension Documents"). Defendant claims that these factors informed its decision to terminate Plaintiff's employment.

Plaintiff, however, alleges that she was fired for other reasons. She states that she was injured a few hours after her return to work on January 11, 2005. Plaintiff claims that this was the real reason for her termination. Plaintiff states that she sustained the injury at about 7:30 a.m. on January 11, and she reported it to her supervisor at about 11:30 a.m. on that day. According to the Plaintiff, an injury

---

[2]In November 2003, Plaintiff was suspended for three days without pay for violation of a policy prohibiting office gossip and spreading rumors. Supervisory notes in the file indicate similar issues presented problems again on three different occasions. The file also contained supervisory notes of warnings given to Plaintiff concerning her interaction with the youth at Ramey-Estep. There were four different entries on this topic, concerning matters like physical restraint and yelling at the youth. (Docket No. 8-6, "11/26/04 Suspension Memo"; Docket No. 8-7, "Supervision Forms").

report was prepared, and she sought medical treatment, which was paid by the Defendant's workers' compensation carrier. The only documentation Plaintiff offers is a copy of an injury report that is clearly dated October 14, 2004. Defendant did submit copies of Doctors' notes from January 11, 2005 and January 14, 2005 placing restrictions on her ability to work.

Plaintiff places much emphasis on the fact that Ms. Grimes was notified of her suspension on January 10, 2005, and that Plaintiff was not notified of her termination until the end of her shift on January 11, 2005– the implication being that if the disciplinary decisions were both made on the 10th, then Plaintiff would have been notified on the 10th or at least at the beginning of her first shift back on the 11th. Because she was not fired until after the end of her shift on that day (after the injury was reported), Plaintiff claims that must have been the motivating factor in the decision to fire her.

## II. Discussion

The law for employment discrimination cases where there is no direct evidence of discrimination comes from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *McDonnell Douglas* provides that the Plaintiff must make out a *prima facie* case of discrimination. The employer must then offer a legitimate, non-discriminatory reason for the action. If the employer articulates such a reason, then

the Plaintiff has the burden of showing the proffered reason was merely a pretext.

Plaintiff apparently does not agree that the Complaint is subject to *McDonnell Douglas* analysis. In fact, Plaintiff's response seems to ignore entirely the existence of the Title VII and FMLA discrimination claims. Plaintiff's primary and only argument is as follows:

> "While her pleadings alleged that she was wrongfully discharged in violation of the Kentucky Civil Rights Act, Title VII of the Civil Rights Act of 1964 and in violation of the Kentucky Workman's Compensation Act **the thrust of her claim is that she was terminated for filing a Workman's Compensation claim** in violation of KRS 342.197...
>
> **Proceeding under the auspices of KRS 342.197, a state action, the court can dispense with the *McDonnell Douglas v. Green,* 411 U.S. 792 (1973) analyses, or any analysis predicated on a civil rights violation.**"

(Plaintiff's Response, p.3) (emphasis added)

Plaintiff's argument makes little sense and is unpersuasive at best. Plaintiff seems to be urging the Court to simply ignore the federal claims in the Complaint, as Plaintiff suggests "defendant's motion for summary judgment should be overruled and this matter remanded to the Boyd Circuit Court for adjudication." (Plaintiff's Response, at 4). This matter was removed to federal court on May 20, 2005 on the basis of federal questions raised in the Complaint (i.e., the Title VII and FMLA claims). It has remained on this Court's active docket for over a year, and at no time did Plaintiff ever seek remand or leave to amend the Complaint. All

this notwithstanding, Plaintiff still misstates the applicable law. Claims of discrimination, such as those at bar, fall under the burden shifting approach of *McDonnell Douglas* and similar cases.

While *McDonnell Douglas* concerned claims of Title VII violations, the burden shifting approach also applies to claims of retaliation under FMLA. In *Skrjanc v. Great Lakes Power Service Co.,* 272 F.3d 309, 315 (6th Cir. 2001), the Sixth Circuit held that, in a FMLA action, proximity in time between an employee's request for leave and his discharge was a form of indirect evidence warranting application of the three-part approach of *McDonnell Douglas*.

Likewise, the courts apply a similar burden shifting approach to claims of retaliatory discharge for pursuit of a workers' compensation claim (i.e., cases brought under K.R.S. 342.197). *See Daniels v. R.E. Michel Co., Inc.,* 941 F.Supp. 629, 632 (E.D.Ky. 1996) (applying Kentucky law).

**1. Prima Facie Case**

Because the standards for establishing a *prima facie* case differ depending on the type of discrimination alleged, each of Plaintiff's allegations are analyzed separately. However, the non-discriminatory reason offered by Ramey-Estep and the pretextual analysis is the same for each and need only be discussed once.

**A. Retaliatory Discharge under FMLA**

To make out a prima facie case for retaliatory discharge under FMLA, the Plaintiff must show that 1) she availed herself of a protected right under the FMLA; 2) she suffered an adverse employment action; and 3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. *Edgar v. JAC Products,* 2006 WL 870500 at *6 (6th Cir. Apr.6, 2006)(unpublished).

There is no evidence whatsoever that Plaintiff notified the Defendant that she intended to take FMLA leave for the Jan. 11, 2005 injury at any time prior to being discharged. Plaintiff was still at work when she was called to the termination meeting and was never taken off work by a physician as a result of the accident. The records indicate that Plaintiff sought medical care after her discharge but was released to return to work the next day with some restrictions. Defendant therefore argues that Plaintiff was capable of working following the alleged January 10 injury and would not have needed to seek or qualified for FMLA leave. There is simply nothing in the record to suggest that Plaintiff notified Defendant on January 11 that she would be taking FMLA leave. Again, the only documentation Plaintiff offers is a copy of an injury report that is clearly dated October 14, 2004. In short, Plaintiff offers absolutely nothing on which the Court could find even the most attenuated of causal connections. Plaintiff therefore fails to establish her *prima*

*facie* case on this Count.

**B. Retaliatory Discharge under K.R.S. 342.197**

In order to establish a *prima facie* claim of retaliation under the Kentucky Workers' Compensation Act, the Plaintiff must show that she was engaged in a protected activity and that the employer was motivated at least in part by the employee's exercise of those rights in making the termination decision. *Grassman v. Landry's Seafood House,* 2003 WL 1240617 at *3 (Ky. App. Mar. 10, 2004)(unpublished). To establish that she was engaged in protected activity, Plaintiff does not have to have filed a formal claim for benefits at the time of termination. However, Plaintiff must establish that at the time of discharge she intended to file and pursue a lawful worker's compensation claim. *Southerland v. Hardaway Management Co., Inc.,* 41 F.3d 250, 256 (6th Cir. 1994)(applying Kentucky law).

Defendant Ramey-Estep reiterates that the decision to terminate Plaintiff was made at its January 10 staff meeting, the day before Plaintiff came back from vacation. (Schaffer Affidavit, ¶¶ 7,8,10; Evans Affidavit, ¶ 5). Therefore, at the time the decision to terminate was made, Plaintiff had not yet suffered any work related injury. Defendant also states that but for the fact that plaintiff was still on vacation and that her supervisor did not work the early morning shift on January

9

11, the plaintiff would have already been notified of the January 10 discharge decision. This claim is supported by the affidavits, and Plaintiff submitted absolutely no evidence to the contrary. Therefore, there is no way Plaintiff can show that her intent to pursue a claim was a motivating factor in the decision since the decision was made the day before the injury. Defendant's assertions are well-supported in the record, and again, Plaintiff simply has not given the Court anything on which even to make a *prima facie* finding of discrimination.

### C. Disparate Treatment, Title VII and K.R.S. 344.040

Plaintiff raises claims for disparate treatment under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, K.R.S. 344.040. With little particularity, Plaintiff claims that her termination was in violation of these statutes. She does not specifically set forth the basis for such discrimination in the Complaint, but does state that she is a woman over the age of 40 and that her "employment position was replaced by a person who was not a member of a protected class." The same standard applies to both claims for establishing a prima facie case, and as noted already, age is a protected class only under the state statute.

In order to establish a prima facie case of discrimination based on a claim that a comparable non-protected person was treated better, Plaintiff must produce

10

evidence that establishes "1)that (s)he was a member of a protected class and 2) that for the same or similar conduct (s)he was treated differently than similarly situated non-minority employees." *Mitchell v. Toledo Hosp.,* 964 F.2d 577 (6th Cir. 1992). Plaintiff has not specifically stated who received better treatment.

While Plaintiff, as a female over the age of 40, is a member of protected classes with regard to both age and gender, she has not satisfied the second requirement. Plaintiff has not identified a similarly situated employee that was treated better. In *Mitchell,* the Court stated that

> To be deemed 'similarly situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment for it.

964 F.2d at 583.

Again, Plaintiff never specifically identified the person with whom she would have the Court compare her. The only possibility seems to be the co-worker who received a suspension for falsifying time on the same day, Sunny Grimes. Ms. Grimes is female, but she is not over 40. However, Defendant argues that the two do not meet the criteria for 'similarly situated' because of the Plaintiff's number of disciplinary and supervisory actions in her history. The Court finds this position well taken, given that these disciplinary actions are well-documented in the record.

11

Additionally, with regard to the Title VII claim, Defendant argues that it is procedurally barred for failure to exhaust. "Filing an EEOC charge against a party is a necessary prerequisite to suit," *Jones v. Truck Drivers Local Union No. 299,* 748 F.2d 1083, 1086 (6th Cir. 1984). There is no evidence of Plaintiff filing or pursuing, let alone exhausting any administrative remedies. On this basis alone the Title VII claim must be dismissed. Additionally, Plaintiff has failed to establish the second requirement for a *prima facie* case for either the state or federal claim.

**2. Employer's Non-Discriminatory Reason and Pretext analysis**

The Court will proceed with the pretextual analysis despite Plaintiff's failure to establish a prima facie case for any of the discrimination claims as set forth above. To establish pretext, Plaintiff must show by a preponderance of evidence either 1) that the proffered reasons had no basis in fact; 2) that the proffered reasons did not actually motivate the adverse action; or 3) that they were insufficient to motivate the adverse action." *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).

Defendant submits that Plaintiff's falsification of her time records was the legitimate, non-discriminatory reason for her termination. Even if the Court were to assume that Plaintiff had successfully articulated a prima facie case for discrimination (a bold assumption to say the least), she has not produced any

evidence to show that the reason given (records falsification) was merely a pretext. Plaintiff cannot show that the reason offered had no basis in fact, that it did not actually motivate the decision, or that it was insufficient to motivate her discharge.

 First, it is undisputed that Plaintiff did in fact falsify her time records. It is likewise undisputed that Plaintiff's co-worker was disciplined for falsifying time for the same period. Both of these facts find substantial evidentiary support in the record. Plaintiff was not disciplined on the same day as Ms. Grimes because Plaintiff had not yet returned to work. Defendant's affidavits support its statement that the decision to terminated was actually made on January 10 in the same meeting where Ms. Grimes' punishment was decided (and before Plaintiff sustained her injury). Defendant also presents evidence to the effect that there is no policy at Ramey-Estep that requires Plaintiff to be notified of her termination at the beginning of her shift. Defendant repeatedly emphasizes that Plaintiff was not notified until the end of her shift on January 11 because her supervisor had to be there and was not scheduled to be in until near the end of Plaintiff's shift, and this fact, too, is borne out by the affidavits.

 Finally, Defendant contends that the reason submitted is sufficient to merit termination. Defendant states "not only did the plaintiff assert that she worked the afternoon hours of January 1, when in fact she had begun her holiday vacation, her

13

co-worker claimed time for the same shift that she was covering for the plaintiff...[t]hus Ramey-Estep not only paid both employees for the same time period, but also paid both employees double holiday pay." Time falsification is listed in the employee handbook as a serious offense that could lead to termination. Additionally, Defendant again highlights the multiple suspensions and supervisory problems in plaintiff's work history at Ramey-Estep. The Court agrees that the proffered reason, coupled with the documented history of disciplinary problems were sufficient grounds for termination.

### III. Conclusion

For the reasons discussed above, the Court finds that Defendant is entitled to judgment as a matter of law and will sustain the Motion for Summary Judgment.

Accordingly, **IT IS HEREBY ORDERED:**

1) that Defendant's Motion for Summary Judgment [Docket No. 8] is **SUSTAINED** and Plaintiff's Complaint is **DISMISSED** with prejudice; and

2) that a separate judgment consistent with this opinion shall enter contemporaneously therewith.

This August 8, 2006.



Signed By:
*Henry R Wilhoit Jr.*
United States District Judge